GENERAL ELECTRIC CO. v. HILL-WRIGHT ELECTRIC CO.

(Circuit Court, S. D. New York. April 6, 1909.)

PATENTS (§ 328*) — INFRINGEMENT — PROCESS OF EXHAUSTING AIR FROM LAMP BULBS.

The Howell patent, No. 726,293, for an improved process for exhausting the air from incandescent lamp bulbs, held not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing. The usual patent suit, based on claims 1 and 2 of letters patent No. 726,293.

Richard N. Dyer and John Robert Taylor, for complainant.

A. Parker Smith, for defendant.

PLATT, District Judge. The bulb of an incandescent lamp must be practically divested of air in order that a reasonably long life shall be obtained for the carbon filament therein which gives us light. The patent in suit relates to a process for exhausting the bulbs, so that their interiors are brought to a state of high vacuum. It is a specific improvement upon the Malignani process, shown in patent 537,693. The process of that patent briefly stated is this: The glass bulb was completely sealed, except at its enlarged end, which was elongated into a slender glass tube. This tube, having within it and near the bulb a certain chemical substance to be utilized later, was connected to a vacuum pump. A large proportion of the air was then withdrawn from the bulb by the pump, and connection with the pump was then stopped by fusing the thin tube between the pump and the inclosed chemical. The filament of the lamp was then brought by electricity to such a high state of heat as to fill the bulb with a peculiar bright blue haze, which indicated ionization. This condition, which was known as intensive incandescence, was the signal for heating the glass tube at the point where the chemical substance had been introduced, and then the gases from the chemical united with the gases generated by the filament and formed a solid or liquid precipitation, thus leaving within the bulb a practically perfect vacuum. This condition was indicated by a disappearance of the peculiar blue haze above referred to, and thereupon the thin glass tube was sealed off from the bulb at the point where it entered it, and the bulb was then, so far as the process had to do with it, completed.

In the practice of the Howell process, under the patent in suit, a similar glass bulb is used; but between the vacuum pump and the thin extension of the bulb a piece of heavy rubber tubing is used, one end connected with the pump and the other with the thin glass extension. A partial vacuum is then produced in the bulb, and pressure is applied to the tubing by a pinch cock, thus shutting off the pump connection. The filament is then brought to a state of high heat, and the gases of the chemical substance are released by heat applied to the thin extension at the point where the chemical substance had been located, the two gases unite, the solid or liquid precipitation follows, and the tube is sealed off. The only difference, then, between the patented process and that practiced by Malignani, is that, after all the air which can be conveniently removed from the bulb by the vacuum pump has been exhausted, the connection with the pump is closed in the one case by pinch cock pressure on the rubber tubing, and in the other case by fusing the thin glass extension with heat. The complainant says that it involved invention to do this, and the defendant says that it did not.

The patentee seems to have thought that the advantage from his invention, if we admit it to be an invention, was that he could shut off connection with the vacuum pump instantly, and without the use of heat, and so retain the partial vacuum in the bulb long enough to permit him to complete the vacuum by heating the chemical in the tube and letting it do the remaining work. If he used heat in closing the connection with the pump, that heat would be liable to let loose the chemical above, and he might have an overdose of volatilized chem-

ical, which would leave the bulb at the end in a spotted condition. He could also make the thin tube extension shorter than Malignani could, and in that way save much glass. The expert thinks he sees another advantage, in that the closure is controllable, and can be applied at the best possible moment; but I am unable to see how the operator has any means of knowing when that moment arrives, because confessedly the closure must occur before the heating of the filament by an increased potential of electricity begins.

To go back for a moment to the question of novelty and invention: There is no difference between Malignani and Howell, except the one suggested. It is due entirely to the different means used in effecting the closure. If the means adopted were old and well known, what invention could there be in using them? We are, therefore, brought to this: When Howell set to work to get rid of the troubles which arose in the practice of Malignani's process, was it a common expedient in the art to connect the thin stem of a hollow glass vessel to a vacuum pump by a thick, heavy, noncollapsible rubber tubing, and provide for shutting off connection with the pump by other means than heat, of which the pinch cock pressure was the one suggested, and evidently the only one discovered? It is the impression of the writer that the answer ought to be in the negative; but the record put in by the defendant is so meager that it would be an ungracious thing for the decision of this case to be placed upon that basis. The application for the patent in suit was before the examiner for several years. The file wrapper and contents, which might throw light upon these matters, is not in evidence; and, as this suit can be easily decided upon another ground, the patent may be left breathing so far as the decree following this opinion is concerned.

The defendant urges seriously the defense of noninfringement. His reasoning in that respect is positively persuasive, leaving no loophole of doubt, and upon that defense alone it is right to dismiss the bill. I shall only say a word or two about my thoughts along that line. It is common sense and good law combined that a process requires certain things to be done with certain substances in a certain order. The process of the patent in suit calls for the doing of certain things in a fixed series of steps, viz.: (1) Putting a chemical into the tube. (2) Partial exhaustion by means of the pump connection. (3) Closing the pump connection at a point between the chemical and the pump. (4) Incandescing the filament. (5) Heating the chemical. (6) Sealing the lamp by fusion as near the bulb as possible. Both the fact witnesses in the case make it plain that in the process used by the defendant the filaments of the lamp were brought to a state of high incandescence before the connection with the vacuum pump was finally closed by the pinch cock. This was surely not the Howell process. It may have been, and probably was, the process which the complainant used in exhausting its lamps; but no monopoly of such a process can be spelled out of the patent in suit.

My reason for thinking it probable that complainant uses the last described process is that it would excuse the expert for finding the advantage of controllability in the closure, which was not found by

the patentee himself. The burden of proof on infringement is, of course, on the complainant; but, if it were on the defendant, it would be my duty to find with the same certainty that the defendant does not infringe.

Let the bill be dismissed.